**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**JODY HUTCHINSON,**

       **Plaintiff,**

     **v.**                        **6:14-CV-787**

**CAROLYN W. COLVIN, Commissioner of**
**Social Security,**


       **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**


## DECISION and ORDER

Plaintiff Jody Hutchinson brought this suit under § 205(g) of the Social Security Act

("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of

Social Security ("Commissioner") denying his application for supplemental security

income ("SSI") benefits. Plaintiff alleges that the decision of the Administrative Law Judge

("ALJ") denying his application for benefits is not supported by substantial evidence and is

contrary to the applicable legal standards. Pursuant to Northern District of New York

General Order No. 8, the Court proceeds as if both parties had accompanied their briefs

with a motion for judgment on the pleadings.

## I.    PROCEDURAL HISTORY

On November 21, 2011, Plaintiff filed an application for SSI benefits. The claim

were denied by initial determination dated May 11, 2012. Plaintiff filed a timely request for

a hearing on June 8, 2012. Administrative Law Judge ("ALJ") James G. Myles presided over a hearing by teleconference on April 10, 2013. The ALJ issued an unfavorable decision on May 1, 2013, which Plaintiff appealed. The Social Security Appeals Council denied his appeal on June 10, 2014. This action followed.

As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II.     FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in his memorandum of law. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III.    THE COMMISSIONER'S DECISION

The ALJ engaged in the required five-step analysis to determine whether a claimant qualifies for disability benefits. (See Social Security Administrative Record ("R."), dkt. # 10, at 11-25). The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since November 21, 2011, the alleged onset date of his application. (Id. at 13). Second, the ALJ concluded that Plaintiff suffered from a set of severe impairments that included: non-insulin dependent diabetes mellitus, hypertension, osetoarthritis of the shoulders, diabetic neuropathy, diabetic retinopathy, gout, Raynaud's disease, left knee pain of unclear etiology, and depression. (Id.). These impairments, the ALJ found, represented more than minimal limitation in Plaintiff's ability to perform work-related activity. (Id.). The ALJ considered Plaintiff's claim that he suffered from a learning disability. (Id.). While the record contained no evidence to support this claim and

Plaintiff's hearing testimony "was not suggestive of significant mental limitations," the ALJ's assessment of Plaintiff's Residual Functional Capacity ("RFC") accommodated this alleged disability. (Id.).

Turning to the next step in the evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically exceeded the severity of one of the impairments listed in the Social Security regulations. (Id. at 14). The ALJ found that the record of Plaintiff's musculoskeletal impairments, including major dysfunction of a joint and disorders of the spine, did not establish an impairment "accompanied by signs that are reflective of listing-level severity." (Id.). The record did not contain any "clinical, laboratory, or radiograph findings" to demonstrate disability under the listings. (Id.). The Plaintiff's vision problems likewise failed to reach a level of severity that met a listing. (Id.). Plaintiff's problems with hypertension and his cardiovascular system also failed to meet a listing, as did his Raynaud's disease. (Id.). Plaintiff's type-2 diabetes milletus was non-insulin dependent and did not meet the severity criteria for any listing. (Id.). The medical evidence also failed to support a finding that either Plaintiff's diabetic neuropathy or gout met a listing. (Id.). Plaintiff's mental impairments failed to meet or medically equal a listing. (Id.). He had no restriction on activities of daily living as result of his mental impairments, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and had no demonstrated periods of decompensation of extended duration. (Id.). Plaintiff therefore could not meet a listing for his mental-health issues, since he did not have at least two marked limitations or one marked limitation and repeated episodes of decompensation of extended duration. (Id.).

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")

3

to perform light work as defined in the Social Security regulations, except that he was limited to standing and walking for a total of two hours cumulatively during an eight-hour workday. (Id. at 16). He could occasionally perform overhead reaching with the dominant right upper extremity, but could not perform any overhead reaching with the non-dominant left upper extremity. (Id.). The ALJ found that Plaintiff should avoid ladders, ropes and scaffolds, as well as concentrated exposure to work hazards. (Id.). In additional, the Plaintiff should not have a job where "[e]xtensive contact with the public" was "a critical function" of his "job responsibilities." (Id.). He was "limited to routine, unskilled work." (Id.).

The ALJ summarized the medical evidence and Plaintiff's hearing testimony. (Id. at 16-19). Plaintiff's medical record demonstrated a history of treatment for shoulder pain. (Id. at 16-17). The record indicated as well that Plaintiff experienced left shoulder pain when raising his arms. (Id. at 17). At the hearing, the ALJ noted that Plaintiff had difficulty lifting his arms over his head, with more difficulty on the left side. (Id.). Because of these problems, the ALJ's RFC assessment limited the amount of overhead reaching Plaintiff could do. (Id.). The ALJ also determined that the record established limitations due to Plaintiff's type-2 diabetes, as well as other conditions, such as peripheral neuropathy, retinopathy, gout and Raynaud's disease at least partly related to that condition. (Id.). The ALJ also found that the medical record demonstrated "a history of mental impairments and a diagnosis of depression." (Id. at 18). Plaintiff had not received any treatment for mental illness, however, since 1986. (Id.). In 2012, a consulting psychologist concluded that Plaintiff suffered from depression and recommended treatment. (Id.). She also concluded that he might struggle with "performing complex tasks independently, relating

4

adequately to others and appropriately dealing with stress." (Id.). She found, however, that Plaintiff was capable of performing simple tasks without supervision, could "maintain attention and concentration, cognitively learn new tasks, and make appropriate decisions." (Id.).

While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, Plaintiff's claims about the intensity, persistence, and limiting affects of those impairments were not entirely credible. (Id.). At the hearing, the Plaintiff did not appear to be in any distress, and he was "responsive and articulate" in answering questions. (Id.). His description of his symptoms and limitations, however, was "vague." (Id.). Activities in which Plaintiff admitted he had engaged undermined his claims about his limitations. (Id.). Plaintiff testified, for instance, that he suffered from foot problems and took a variety of medication, yet was able to leave the home, ride in a car, prepare simple meals, and do light chores. (Id.). Despite his history of depression, Plaintiff's testimony "was not suggestive of significant limitations." (Id.).

Next, the ALJ found that Plaintiff had no past relevant work. (Id. at 20). The ALJ then found that, considering the Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which he could perform. (Id.). The vocational expert had testified that Plaintiff could perform the requirements of a number of representative occupations, such as document preparer, addressor, and surveillance monitor. (Id. at 20-21). Because such jobs were available to a person with Plaintiff's RFC, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and that a finding of "not disabled" was required. (Id.).

5

Plaintiff challenges these findings in various respects.

## IV.    STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1 427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing

6

court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V.    DISCUSSION

Plaintiff offers two grounds for challenging the opinion of the ALJ. The Court will address each in turn.

### A.    Use of Opinion Evidence

Plaintiff first argues that the ALJ erred by failing to state what weight he had applied to the opinion of the examining psychologist, Rachelle Hansen. In any case, the ALJ's conclusions with regard to Plaintiff's mental limitations are inconsistent with Hansen's findings. Defendant contends that the ALJ did explain the weight assigned Hansen's opinion. The ALJ, Defendant insists, also properly assessed the limitations assigned by Hansen.

Plaintiff is incorrect that the ALJ failed to explain the weight that he assigned to Dr. Hansen's opinion. The ALJ's decision finds that Hansen concluded that Plaintiff "could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; cognitively learn new tasks; [and] make appropriate decisions." (R. at 19). At the same time, the ALJ found that Hansen's

7

opinion was that Plaintiff "might have difficulties performing complex tasks independently, relating adequately to others and appropriately dealing with stress." (Id.). The ALJ assigned "some weight to this opinion and note[d] that the assessed residual functional capacity accounts for the claimant's mental impairments." (Id.). In assigning Plaintiff's RFC, the ALJ concluded that "[e]xtensive contact with the public should not be a critical function of the [plaintiff's] job responsibilities." (Id. at 16). The ALJ noted "a history of mental impairments and a diagnosis of depression," but that Plaintiff "report[ed] that he last received mental health treatment in 1985-1986." (Id. at 19).

The record is clear that the ALJ did state the weight accorded to Dr. Hansen's opinion. Remand on that basis is not appropriate. Similarly, Plaintiff's claim that the ALJ failed to offer an explanation for ignoring or discrediting Dr. Hansen's position is not supported by the record. Plaintiff claims the ALJ ignored two of Dr. Hansen's findings: that Plaintiff's "difficulties appear to be caused by his pain and physical difficulties"; and that "the results of" her examination "appear to be consistent with stress related problems, and this may significantly interfere with plaintiff's ability to function on a daily basis." As to the first of these claims, the ALJ acknowledged that Hansen "stated that the aforementioned limitations appear to be caused by the [plaintiff's] pain and physical difficulties." (R. at 18). The ALJ did not reject that finding. As to the second finding, the Court first notes that Hansen's finding is not definite, stating only that Plaintiff's limitations "may" cause problems with daily functioning. Such a finding required the ALJ to interpret other data to reach a conclusion. The ALJ thus pointed to evidence in the record that supported his assessment of Plaintiff's mental functioning, noting that "[d]uring a psychiatric consultative examination, the [plaintiff's attention and concentration were intact; he was able to perform

8

simple mathematical equations; and his recent remote memory skills were intact."  (Id.).

The ALJ also pointed to various activities of daily living that Plaintiff could perform despite

his other limitations, and noted that Plaintiff was not taking any medication for depression

or receiving any treatment on the issue.  (Id.).

The ALJ therefore had substantial evidence to support his findings on Plaintiff's

mental limitations.  He did not ignore Hansen's findings, but instead pointed to how the

record supported the limitations he established.  Though the ALJ did address Hansen's

findings, he was not required to provide a point-by-point explanation of how that opinion fit

his findings.  Indeed, "[w]hen . . . the evidence of record permits [the court] to glean the

rationale for an ALJ's decision," the ALJ need not "have mentioned every item of

testimony presented to him or have explained why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability."  Mongeur v. Heckler,

722 F.3d 1033, 1040 (2d Cir. 1983).  Plaintiff's motion will be denied in this respect.

### B.    Evidence Not Evaluated by the ALJ

Plaintiff next contends that the ALJ's opinion ignored the Diabetes Functional

Capacity Questionnaire provided by Marie Heylen, FNP-C.  Dated April 22, 2013, the

questionnaire had been provided to the ALJ a week before he issued his decision, though

the ALJ did not mention the evidence in his decision.  The questionnaire addresses the

limitations caused by Plaintiff's type-2 diabetes.  The Appeals Council also failed to

address this evidence.  The Commissioner responds that the evidence was never before

the ALJ.  Moreover, the Appeals Council considered the new evidence and did not remand

the case to the ALJ for reconsideration.  In the end, the Commissioner argues, the ALJ's

decision acknowledged limitations caused by the Plaintiff's diabetes which would not have

been altered by this evidence.

Federal law permits a court to order that the Commissioner consider new evidence "'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record at a prior proceeding.'" Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) (quoting 42 U.S.C. § 405(g)). "New evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative.'" Id. (quoting Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)). Materiality also demands "'a reasonable probability that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" Id. (quoting Tirado, 842 F.2d at 597).

The record in question, a "Diabetes Mellitus Residual Functional Capacity Questionnaire," was completed by Marie Hayden, a Nurse Practitioner, on April 22, 2013. (R. at 371-76). The report lists Plaintiff's diagnoses as "gout, Raynaud's, diabetic retinopathy, diabetic polyneuropathy, hypertension, diabetic macular edema, and d[iabetes] m[ellitus]." (Id. at 371). The report listed Plaintiff's symptoms as including extremity pain and numbness, difficulty walking, muscle weakness, retinopathy, sweating, and vascular disease/leg cramping. Id. Hayden denied that Plaintiff was a "malingerer," and certified that emotional factors "contribute[d] to the severity of [Plaintiff's] condition." (Id. at 372). Still, Plaintiff's diabetes "seldom" interfered with his "attention and concentration." (Id.). He was capable of "low stress" jobs. (Id.). Plaintiff suffered form drowsiness as a side effect of his medication. (Id.). Hayden concluded that Plaintiff could walk only 1/4 of a block without rest or severe pain, could sit or stand for only 20 minutes at a time and could stand or walk for less than two hours in an eight-hour day. (Id. at 373).

10

He needed a job that allowed him to shift positions at will from sitting, standing or walking, and required periods of walking around during an 8-hour day. (Id.). He needed five-minute walks every 20 minutes. (Id.). He also needed unscheduled breaks to relieve his neuropathy. (Id. at 373-74). Plaintiff could rarely lift 20 pounds, occasionally lift 10 pounds, and frequently lift less than 10 pounds. (Id. at 374). He could never climb ladders or stairs, and only occasionally twist, stoop or crouch. (Id.). Plaintiff had no significant limitations in reaching, handling or fingering. (Id.). Plaintiff was to avoid even moderate exposure to extreme heat or cold, high humidity, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners, chemicals, and some other unspecified irritants or allergens. Id. at 375. He was to avoid all exposure to fumes, odors, dusts and gasses. (Id.). Though unclear how often, Hayden also found that Plaintiff's condition would cause him to suffer good and bad days.

Hayden's April 22, 2013 evaluation is a more detailed version of a February 2, 2013 medical source statement she also completed. (Id. at 341). There, Hayden listed Plaintiff's diagnoses as "diabetes, neuropathy, retinopathy, chronic back pain, mild, chronic." (Id.). Hayden certified that "pain, fatigue and concentration is present to such an extent as to be distracting to adequate performance of daily activities of work causing the patient to be off-task for at least 25% of the time in an 8-hour block of time." (Id.). He would also likely have good and bad days, but not in a predictable way. (Id.). He suffered from neuropathic leg pain making it hard to stand for extended periods." (Id.). The ALJ's opinion examined Heylan's findings and concluded that they were entitled to "some weight." (R. at 19). He rejected her finding that Plaintiff would be off-task for 25% of the day due to pain, fatigue and concentration issues, but accommodated Hayden's finding

11

that Plaintiff faced "difficulty standing for extended periods" in his RFC assessment.

The ALJ rendered his decision in this case on May 1, 2013. The parties disagree about whether Hayden's April 22, 2013 opinion was before the ALJ at the time he rendered his decision. Whatever the case, the ALJ failed to address this evidence, which was submitted after the hearing. The Appeals Council also failed to directly address the evidence in upholding the ALJ's decision. The Court will treat the evidence as if were new evidence. The question before this Court is thus whether the additional assessment is material.

As stated previously, "[n]ew evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative.'" Pollard, 377 F.3d at 193. (quoting Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)). The question here is one of materiality, which demands "'a reasonable probability that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" Id. (quoting Tirado, 842 F.2d at 597). The evidence supplied by Hayden does not add anything material to the ALJ's assessment of the health issues faced by the Plaintiff–the ALJ found that the Plaintiff suffered from diabetes mellitus and various conditions related to that disease. The detailed questionnaire supplied by Hayden, however, addresses the limitations resulting from that condition, and thus could be considered by the ALJ in determining Plaintiff's RFC. Hayden's opinion appears to place a slight additional restriction on Plaintiff's functioning: her opinion states that Plaintiff is unable to use ladders, ropes and scaffolds, while the ALJ's RFC finding states only that Plaintiff must "avoid" such work. She also notes that he should avoid exposure to certain extreme conditions and chemicals. Remand to consider that additional limitation would

12

not be material however, since the jobs listed found by the vocational expert did not require such extreme exposure. Plaintiff could perform those jobs even with an additional limitations as described by Hayden. The Court will therefore deny the motion on those grounds as well.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED.** The Commissioner's motion for judgment on the pleadings is **GRANTED**. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Dated:March 1, 2016

Thomas J. McAvoy
Senior, U.S. District Judge